THE BADGER LUMBER COMPANY, Respondent, v. BALLEN-
TINE, FOSTER & Co. et, al., Appellants.

Kansas City Court of Appeals, May 1, 1893.

1. **Mechanics' Lien**: PARTIES. A mechanics' lien was filed against
four contiguous lots for four buildings thereon. Each lot had a
distinct mortgage on it. Three of the mortgagees and their trustee
were made parties defendant in the suit to enforce the lien but the
fourth mortgagee who had the same trustee was not made a party.
Before the trial the trustee became the owner under foreclosure of all
the mortgages. *Held*, there was no defect of parties, since the owner
and the contractor, the only necessary parties, were made defendants;
and besides at the time of the trial all the parties in interest were
before the court, the mortgagees' interest having ceased by fore-
closure.

2. ———: PRINCIPAL AND AGENT: AUTHORITY TO WAIVE LIEN. A general
agent or manager in charge of a lumber yard and all the business con-
nected therewith, selling for cash or long or short credit, as he deemed
best, has authority to waive a mechanics' lien, and did in this case
waive it. The doctrine of an agent's apparent authority discussed
and applied.

*Appeal from the Jackson Circuit Court.*—HON. MATHEW
FYKE, Special Judge.

REVERSED *(as to Mechanics' Lien).*

*Cook & Gossett,* for appellants.

.. (1).. A failure to include all such houses in the
mechanic's lien statement required to be filed with the
clerk renders the same invalid as to those which are
included therein, because it fails to bind those which
are omitted. *Rice v. Nautasket Co.,* 140 Mass. 256;
*Foster v. Cox,* 123 Mass. 44; *Stevens v. Lincoln,* 114
Mass. 476; *Schulenburg v. Vrooman,* 7 Mo. App. 133;
*McCauley v. Mildrum,* 1 Daly (N. Y.), 396. (2) The
*cestui que trust* in a deed of trust is not bound unless

made a party to the suit in time, and a sale under the deed of trust will necessarily carry title clear of the lien; and this is so, although the trustee may be a party. *Coe v. Ritter*, 86 Mo. 277; *Crandall v. Cooper*, 62 Mo. 478; *Missouri Fire Clay Works v. Ellison*, 30 Mo. App. 67; *Bayard v. McGraw*, 1 Bradw. (Ill.) 134; *Clark v. Manning*, 4 Bradw. (Ill.) 649; *Phœnix Ins. Co. v. Batcher*, 6 Bradw. (Ill.) 621; Revised Statutes 1889, sec. 6713. (3) One man or one property cannot be compelled to give contribution unless respectively and equally bound for the common charge which another is compelled to pay. *Johnson v. Wild*, L. B. 44 Ch. Div. 146; *Foster v. Burton*, 62 Vt. 329; *Cochran v. Walker*, 82 Ky. 220; *Van Patton v. Richardson*, 68 Mo. 379. (4) The agent executing waiver was not a special agent but a "manager"—a general agent. Within the apparent scope of his authority such agent may waive the principal's rights although contrary to his special instructions. *Pitnowsky v. Beardsley*, 37 Iowa, 9; *Baum v. Aultman*, 80 Wis. 307; *McNicols v. Nelson*, 45 Mo. App. 445. Party right to rely on apparent authority of agent. *John Hutchison Mfg. Co. v. Henry*, 44 Mo. App. 263. Possession of goods—*indicia* of authority to receive pay therefor, etc. *Indianapolis Rolling Mill Co. v. Railroad*, 120 U. S. 256; *Pelkington v. Ins. Co.*, 55 Mo. 172; *Hamilton Ins. Co.*, 94 Mo. 368; *Jackson v. Ins. Co.*, 27 Mo. App. 62; *Heilman v. Dollarhide*, 32 Mo. App. 178; *Kinealy v. Burd*, 9 Mo. App. 359; *Curry v. Giles*, 10 Ga. 10; *White Lake Lumber Co. v. Stone*, 19 Neb. 403. Mechem on General Agency, secs. 278, 279 283, 284, 287; Wharton on General Agency, secs. 126, 22; Story on General Agency, 126, 127. See as to General Manager, *McKiernan v. Lenzie*, 56 Cal. 61, and *Farnum v. Ins. Co.*, 83 Cal. 246; Manager regarded as possessor of powers of owner, 17 Mo. 344; Mechem on Managers' Powers, 395; *Bailey v. Par-*

*dridge*, 134 Ill. 188. (5) As to this sale, particularly as it was incomplete at the time the waiver was executed, the agent White had authority to impress it at that time with any terms he saw fit. He could have rescinded the entire contract or agreed on a different price or arrangement. *Denman v. Bloomer*, 11 Ill. 177; *Bloomer v. Denman*, 12 Ill. 240; *Anderson v. Coonley*, 21 Wend. 279; *Scott v. Wells*, 6 Watts & S. 357; *Taylor v. Nussbaum*, 2 Duer. 302.

*J. B. Hamner, Kinley & Kinley*, for respondents.

(1) The statute requires as absolutely necessary parties the parties to the contract and the owner who contracted with the contractors for the erection of the houses; and all other parties may be made parties, but if not so made they shall not be bound by the proceedings. Revised Statutes, 1889, sec. 6713; *Steinman v. Strimple*, 29 Mo. App. 478; *Whitmeyer v. Dart*, 29 Mo. 565. (2) The alleged waiver was not made by authority, either general or special. White, who signed plaintiff's name to such instrument was plaintiff's salesman in charge of the Fifteenth street and Cleveland avenue yards, under the direct supervision of plaintiff whose general officers were in Kansas City. The cases cited by appellants to support the contention that plaintiff is bound by the act of White, whether in the regular course of business or not, do not sustain them on this question. *Flanagan v. Alexander*, 50 Mo. 50.; *Fairbanks v. Long*, 91 Mo. 628; *Railroad v. Vivian*, 33 Mo. App. 583; *Wheeler v. Link*, 75 Mo. 100; *Atlee v. Fink*, 75 Mo. 100; *Buckwalter v. Craig*, 55 Mo. 71; *Gentry v. Ins. Co.*, 15 Mo. App. 215; *Winsor v. Bank*, 18 Mo. App. 665. (3) Persons dealing with one claiming to have authority to act for a corporation are held to learn the powers of

such agent.   This is especially so, when the act done is outside of the regular course of business or scope of the employment of the agent.   1 Beach on Corporations, sec. 187; *Bocock v. Coal Co.*, 82 Va. 913; *Credit Co. v. Machine Co.*, 54 Conn. 357; *De Bost v. Albert Palmer Co.*, 35 Hun, 386; *Railroad v. McKinney*, 55 Tex. 176; *Hardin v. Railroad*, 78 Iowa, 726; s. c., 43 N. W. Rep., 543; *Deacon v. Greenfield*, 21 Atl. Rep. (Pa.) 650; 141 Pa. St. 475; *Carr v. Greenfield*, 19 Atl. Rep. (Pa.) 676; *Irish v. Pulliam*, 48 N. W. Rep. (Neb.) 963; *Lee v. Hassett*, 39 Mo. App. 67; *Jodd v. Duncan* 9 Mo. App. 417; *Ehrlich v. Ins. Co.*, 88 Mo. 249.

GILL, J.—This is an action to enforce a mechanics' lien.   Defendant Young was the owner of certain contiguous lots in Kansas City having a frontage of one hundred and twenty feet, and he contracted with defendants, Ballentine, Foster & Co., for the erection of four houses thereon, each occupying thirty feet front. Said Ballentine, Foster & Co. purchased the necessary lumber from the plaintiff.

While the buildings were in course of construction Young borrowed certain sums of money from the defendant Alliance Trust Company and the Scottish-American Mortgage Company, and to secure same made four several deeds of trust, defendant Holmes being trustee, and each covering thirty feet front of said real estate.   Three of these were made to secure the Alliance company and one, covering thirty feet of the ground, was made to secure the Scottish company.

The lumber company failing to get pay for the material furnished filed its lien against the four houses and lots and sought by this action to enforce same.   On a trial below plaintiff recovered, and defendants, Holmes and Alliance Trust Company, appealed.   The real contest, it seems, is between the plaintiff and defendant

Holmes, who since the institution of this suit has become the owner of the four houses and lots by reason of the foreclosure of the four deeds of trust above mentioned. Other facts will be mentioned in course of the opinion.

I. Defendant's first point of attack relates to the failure of the plaintiff to make the Scottish-American Mortgage Company (who was beneficiary in a deed of trust covering one of the houses) a party defendant to this action. It is claimed that by reason thereof the entire bill of lumber which went into the construction of all four houses is made a charge on *three* only of said buildings, in other words that the lien was released as to one fourth of the property and the other three fourths made to bear the entire burden, etc.

We fail to see in this the commission of any wrong, technical or otherwise, to these defendants. These four buildings were erected on contiguous lots and under one general contract, and it was therefore permitted plaintiff to file and enforce one lien against the entire property. Revised Statutes, 1889, sec. 6729. And this it sought to do. Then by section 6713 of the mechanics' lien statute it is provided, that, "in all suits under this article, the parties to the contract *shall*, and all other persons interested in the matter in controversy or in the property charged with the lien *may*, be made parties, but such as may not be made parties shall not be bound by any such proceedings." The plaintiff here complied literally with this statute. The owner Young was made a defendant along with Ballentine, Foster & Co., his contractors; the making the holders of incumbrances also parties was at the option of the lienor. The statute says they *may* be made parties, but if not made parties then they are not bound by the proceedings. It is true that when the suit to enforce the lien was instituted the Scottish-American company

was the holder of a mortgage lien on a portion of the property sought to be charged and it was not made a party defendant, yet the most that can be said of this omission is that it would not be bound by the proceedings, but the proceedings were valid nevertheless.

But there is another view to be taken of this matter which takes away from the defendants' contention all semblance of merit. While the Scottish-American company as mortgagee was not brought in when the action was begun, yet E. E. Holmes *was* made a defendant, and he continued such till the trial of the cause. Now after the suit was brought, and before the trial and judgment, the mortgage of the Scottish-American company was foreclosed and Holmes became a purchaser, and therefore subrogated to all the rights of the company. In other words, during the pendency of the suit the interest of the Scottish-American company ceased and defendant Holmes became substituted in its stead. The company was then no longer interested in the property charged with the lien, and was therefore *at the trial* wholly unconcerned as to the result of the case, but Holmes was a party in interest and was a party to the suit, and then and there defended his interest. So then it seems, that when this cause was tried *all* parties interested in the subject-matter "or in the property charged with the lien" were parties to the action.

We see nothing then in the first matter of complaint urged in brief of defendants' counsel.

II. But the second point made against the enforcement of plaintiff's alleged lien is of a more serious nature. This relates to the claim of waiver by the plaintiff Badger Lumber Company of its priority of lien over the four mortgages which were executed as above stated during the construction of the buildings.

On the face of things it must of course be conceded that plaintiff's lien for materials used in the buildings would be preferred to that of the four mortgages executed after the commencement of the work. Revised Statutes, 1889, sec. 6711. But it is claimed by the defendants that this priority was waived by the plaintiff—that is, in so far as concerns them and the mortgages under which they claim.

The history of the transaction in that regard is as follows: After the commencement of the buildings, and while the plaintiff lumber company was delivering the materials which it had agreed to furnish, Holmes, the agent for the Alliance Trust Company and Scottish-American Mortgage Company, was applied to for a loan on the property; and in behalf of these corporations he agreed to loan Young, the owner, the sum of $15,000, taking as security therefor four separate mortgages of $3,750 each on a house and lot of thirty feet front, *provided*, however, that Young should get from the Badger Lumber Company a waiver as to these loanors of any mechanic's lien it might have or acquire against the property; and said loanors refused to let the money to Young unless said waiver was secured.

Thereupon Young applied to White, the agent in charge of plaintiff's yards at Kansas City, and a written stipulation was signed by him as manager for the Badger Lumber Company, and which purported to waive its priority as demanded by said mortgagees, and substantially agreeing therein to look to the money that was to be raised by said loans. There was at that time a prior mortgage of $10,000 on the property, which was to be paid off and the balance of the $15,000 loan was to go towards paying for labor and materials used in constructing the four houses, and of this plaintiff subsequently received as part payment on its bill the sum of $500.

Replying to this claim of waiver the plaintiff denies the authority of White to make it, and upon this arises the main controversy in the case.

After a careful consideration of this entire record we think the evidence incontestably shows that as to the public generally, and the mortgagees aforesaid as well, said White had ample authority to enter into this agreement of waiver on behalf of the Badger Lumber Company.

The trial court on this point of its own motion gave the following instruction:

The court instructs the jury that if you believe from the evidence that F. A. White was the manager of and in charge of plaintiff's lumber yard from which the lumber in question was sold, and that he was authorized to sell lumber upon general credit, with or without security therefor, to such persons as he might deem proper, and for such purposes and on such terms as he might deem proper, and had general management and charge of the business of plaintiff at said lumber yard, and that while so in charge thereof he executed the paper read in evidence, dated June 16, 1890, as manager for plaintiff, then you must find for defendants Holmes and the Alliance Trust Company."

We regard this instruction as correctly embodying the principles of law applicable to this case, *except* that the court should have declared peremptorily in favor of the waiver, since every fact upon which this instruction was predicated was indubitably and without question shown by the evidence.

The Badger Lumber Company was at that time conducting its business over a wide extent of territory, having thirty or forty distinct and separate yards in as many towns and cities in this western country. Its general office was kept in the business (office) portion of Kansas City, and the lumber yard here was at a

distance of quite three miles in the suburbs. Over each of these separate yards throughout the country there presided a local manager or general agent who had, apparently at least, full and complete power and authority to sell for cash or on credit and for a long or short time, to judge of the responsibility of parties, to sell lumber to be used in the erection of buildings where no lien could he had, or for making wagons or other personal property and to sell on personal credit without reference to buildings. He had, too, authority to file liens and make affidavits thereto (as he did in this case), and in short to do any and everything necessary to be done in the general conduct and management of a lumber yard. The only difference between this manager or general agent at Kansas City and at other yards of the plaintiff throughout the country was as Mr. Toll, the president of the company, testified, that he, White, being near to the main office, was supposed to consult with the officers there more frequently than others. As shown by all the evidence Mr. White was apparently in chief, unlimited control. The company seemingly trusted entirely to his judgment and discretion. He was the *alter ego*, so to speak, of the corporation plaintiff.

The law in such cases is well settled. Where the principal holds out one as his general agent, apparently in the entire management and control of a particular business, the principal will be bound by the acts of such agent within the scope of the apparent general authority, even though he may in fact violate the private instructions of such principal. Story on Agency, sec. 126. As said by another author: "The criterion in this case is the *character* bestowed by the principal. He may not hold the agent out in the character of one having a general power and bind third persons who have relied thereon in good faith by secret limitations

and restrictions upon the agent's authority which are inconsistent with the character bestowed. Although the agent violates his instructions or exceeds the limits set to his authority, he will yet bind his principal to such third persons, if his acts are within the scope of the authority which the principal has caused or permitted him to appear to possess." Mechem on Agency, sec. 279. So then it would be immaterial here if White was restricted by instructions from his principal, unless such were known by third persons dealing with him.

It cannot be seriously denied that this arrangement entered into by manager White was within the scope of his apparent authority to manage and conduct the entire business of this lumber yard. As already said he had full authority to sell and collect. And the means he adopted to collect this bill was, as he testifies, approved by his own judgment. By releasing his lien and thereby securing the loan, White thought the cash was procured for the ready payment of the bill of lumber he was selling to Young. He was mistaken, it is true, for he only got of the amount borrowed a payment of $500. But these defendants ought not to suffer because of White's poor judgment. In addition to this he knew he was providing for the payment of a prior lien (the $10,000 mortgage), which of course would strengthen his security.

We have examined all the cases referred to by counsel, but it will serve no good purpose to comment on them in detail. The supreme court of Nebraska in a case quite similar arrived at the same conclusion as that announced here. See *White Lake Lumber Co. v. Stone*, 19 Neb. 402.

Of the authorities cited by plaintiff's counsel, those from Pennsylvania (134 Pa. St. 503 and 141 Pa. St. 467) are more nearly related to the case in hand; but

the authority of the agents there named was of a more limited character than was that of White in this instance. The releases there were made by mere clerks or foreman in the yards during the temporary absence of the principals. Here White had complete control at all times. The principal was never present except in the person of White. He was designated, held out and published to the world as the *general agent* or *manager in charge* of all the business connected with the sale and delivery of the lumber, as well as the collection of bills therefor, at this particular yard. Under the circumstances it would be the greatest injustice to permit this plaintiff to deny White's authority to execute this waiver of lien. The defendants parted with their money on the faith of such waiver—relying on White's apparent authority. And as the plaintiff held White out as possessing such general authority it will not now be allowed to deny it.

The recital in the written waiver that plaintiff had sold the lumber to Young, whereas it was strictly a sale to Ballentine, Foster & Co., Young's contractors, is of no substantial importance. The character of the transaction was as to all the facts fully understood by all the parties. While Ballentine & Foster were the nominal contractors, the plaintiff was looking to Young for payment of the lumber that was to be put into his, Young's, house.

The judgment then of the lower court, in so far as it charges a mechanics' lien on the property in question, will be reversed. All concur.